*DANIEB, J.
The clause in the " deed, mainly assailed by the counsel of the appellants in his argument here, is that which provides that the trustee Collier, with the consent in writing of Bragg and Thompson, shall permit Nichols, one of the grantors, to carry on the mercantile business, in which, he and his partner Hill had been engaged, with authority to replenish the stock of goods on hand. Such a provision, it was argued, was of itself sufficient to render the deed invalid, and the case of Owen & Wish v. Body and others, 31 Eng. C. L. R. 254, and several American cases, were mainly relied on in support of the proposition.
In the case of Owen & Wish v. Body, the debtor, who was engaged in the business of an inn-keeper, by his deed of assignment conveyed to Owen & Wish, his principal creditors, all his household goods, stock in trade, debts, estate and effects whatever, upon trust that they should, with all convenient speed, in such manner, at such time or times, and on such terms as they should think most advantageous, sell the goods and chattels ; and should also, so long as they might think it advantageous to do so, continue and carrjr on the business of the debtor, either in his name, or in their own names. The assignees were empowered to purchase horses, carriages, and all other articles and things necessary to keeping up the stock in trade, and carrj-ing on the business. Out of the moneys arising-from a sale or the profits of the business, Owen & Wish were first to retain a sufficiency to pay their own debts, and then, from time to time, to distribute the residue ratably among such of the other creditors as should execute the deed within three mouths, as often as there should be sufficient money on hand to pay two shillings in the pound upon or in respect of said last mentioned debts.
The deed further provided, that the assignees, on being requested in writing bjr the major part in value of the other creditors, should, instead of continuing *on the said business or trade, proceed to sell and convert into money immediately all the goods, stock in trade, effects, &c.
The assignment was declared invalid; Bord Denman, C. J., speaking for the court, simply stating that the ground of the decision was, that “the deed imposed such terms as might have constituted a partnership among the persons executing it, and those were terms to which creditors were not bound to submit.”
That case, however, though not overruled, has been very much narrowed in its application by more recent decisions of the English courts: Janes v. Whitbread and others, 5 Eng. L. & Eq. R. 431; Coate and another v. Williams, 9 Eng. L. & Eq. R. 481. In the former of these two cases the deed, after authorizing the trustee to sell the property and pay the debts, proceeds to provide, that “it shall be lawful for the said trustee also to employ the said James Ellis (the grantor), or any other person or persons, in winding up the affairs of him the said James Ellis, and in collecting and getting in his estate hereby assigned, and in carrying on his trade, if thought expedient by him; and to allow to the said James Ellis, or any other person or persons so employed as aforesaid, out of the said trust estate, such sum and sums as to the said trustee shall seem proper.” The court of common pleas sustained the deed. They construed the pr'ovision for carrying on the trade as merely authorizing the trustee to go on with the trade with a view to winding up. They said that the main object of the deed was to have the property realized; and that the carrying on the trade *865 was no more than ancillary to that object: and in this they said the case was to be distinguished from the case of Owen v. Body, in which they thought it apparent that the main object of the deed was to continue the business of the debtor in a spirited manner for the benefit of the preferred creditors. In Coate v. Williams, *the clause in respect to carrj'-ing on the trade was almost identical in terms with that in Janes v. Whitbread. The Court of exchequer, following the decision in Janes v. Whitbread, held that there was nothing objectionable in such a provision: Pollock, C. B., observing that the deed was in precisely the same terms with a printed form which might be had at any law stationer’s in Eondon.
Deeds with like provisions have been frequently sustained by the courts of our sister states. As, in the case of De Forest v. Bacon & another, 2 Conn. R. 633; where the deed conveyed all the stock of a country store, a large quantity of boxes and brushes, finished and unfinished, in a brush and box factory, together with a quantity of raw materials for making the same; upon trust to the trustees to sell and pay the debt, and with power to the trustees to conduct and carry on the manufactory of brushes of various kinds until all the materials then on hand should be consumed, and to purchase such articles as might be necessary to manufacture and work up all the raw materials then on hand. Such a provision in a conveyance the court said did not make it fraudulent per se; it could only be evidence of fraud proper to be left to the jury; and as the question of fraud had been fairly submitted to the jury, who had negatived the fraud, there was no ground of complaint.
A like decision was made in the case of Kendall v. The New England Carpet Co. 13 Conn. R. 383. There the assignment was by the company of all its goods, materials, effects, &c., to its principal endorser, for the purpose of indemnifying him, with power to the assignee to work up the stock on hand, to make purchases of any materials necessary for that purpose, and to pay all expenses incurred from the avails of the property assigned. Williams, C. J., in delivering the opinion of the court sustaining the validity of the deed, *said, that the power in question was one which might be greatly beneficial to all the parties connected with the affairs of a large manufacturing establishment; that the sudden suspension of the operations of such a concern, and the sale of the stock in the various stages of manufacture, in parcels or together, would necessarily greatly diminish the value of the property to the creditors, and impair their security; that the power, it was true, was one which might be abused, but that the interest of vigilant creditors would generally prevent or detect any improper exercise of the power.
Similar views prevailed in the cases of Cunningham v. Freeborn, 11 Wend. R. 240; Foster v. The Saco Manufacturing Co., 12 Pick. R. 451; Woodward v. Marshall, 22 Pick. R. 468 ; Robins & als. v. Embry & als. 1 Smedes & Marsh. Ch. E. 207; and Dunham & Dimon v. Waterman, 3 Duer’s R. 166.
I have been unable to perceive that there is any necessary conflict between these decisions and the case of The American Exchange Bank v. Inloes and others, 7 Maryl. R. 380, and Whallon v. Scott, 10 Watts’ R. 237, cited by the counsel for the appellants. The deed in the former case empowered the trustee to sell the property, at his discretion, gradually, in the manner and on the terms in which, in course of their business, the grantors has sold and disposed of their merchandise. No time was lixed for the winding up of the business, and no power was given to the creditors to have the trust closed. The court, after adverting to several other features in the deed which they regarded as indicating a fraudulent design on the part of the grantor, said that the deed was simply a contrivance, through the instrumentality of a trustee, to provide for carrying on the business of the concern in the same manner in which it had been before conducted, and for an indefinite period, free of all control or interference on the part of creditors; and that a debtor could not thus postpone his creditors *to an indefinite peril d without their assent. It was, however, conceded by the court that there might be cases in which the stipulation in qu< s~ tion would be proper, where it was designed to be ancillary to the winding up of 1Le debtor’s business, or was designed more effectually to promote the interests of the creditors, and not intended for the benefit of the debtor.
In the case of Whallon v. Scott, the deed was held to be invalid, chiefly on two grounds: First, that by the language of the assignment the assignor parted only with the possession of the effects assigned, and not with the property, for a limited time, during which the court said it was impossible to say who was the owner; and 2dly, that whilst the assignees were empowered during the interval to sell the goods by retail, no appropriation of the proceeds was provided for. I see nothing- in the facts of the case, or in the language of the court, which would make the decision or the opinion of the court in that case authority for denying to a debtor, in making an assignment for the benefit of creditors', the power to enter into stipulations for the winding up of the business, as were sustained in the cases I have cited.
In the deed under consideration, the clause conferring upon Nichols, as agent, the power to carry on the business and replenish the stock, does not in terms declare (nor is it in any other part of the deed in terms declared), that the power is given for the purpose of winding up the business of the concern. But on reading this clause in connection with the other provisions of the deed, and more especially the provisions *866 contained in the last paragraph, the true construction to be put on the provisions directing the manner of disposing of the goods and their proceeds, taken as a whole, is, X think, that Collier is vested with the power, as soon as he shall deem it advisable, or as soon as he shall be requested in writing, either by *Bragg or Thompson, the preferred creditors, or by any three of the other creditors, to make sale of said goods at auction, in such way as the said Collier shall judge best for the benefit of the parties interested; and that in the meantime Collier, with the consent of said Bragg and Thompson, may employ Nichols as his agent to sell the goods by private 'sales, and replenish the stock whilst so carrying on the business; and that the proceeds of the sales, whether of the sales made by. Collier at auction, or of those made by Nichols whilst continuing the business, are to be applied in payment of the two preferred debts. So construing the deed, I cannot see that there is anj-provision in it inconsistent with an honest surrender by a debtor to his creditors, of his property for the payment of his debts. The grantors have parted completely with all their property, and with all dominion and control over it. They have devoted all their goods, effects and credits to the pajTment of their debts. Without insisting on any release by their creditors, they make an entire surrender of their property, its profits and proceeds. It is true, that in the event of the stock being sold by Nichols privately, he would probably derive a benefit from the clause conferring the power to sell in that manner. The goods would in all probability bring higher prices, and consequently go further in discharging the debts for which he was bound, if thus sold, than if forced off immediately at"*public auction. Still any benefit, thus accruing to Nichols, would not be due to any reservation or stipulation in the deed on which he would have a right to insist against the consent of his creditors; but would come to him, incidentally, from the exercise of a power, the control of which, by the terms of the deed, was in no respect with him, but wholly with the creditors and the trustee.
Nor is any ground for impeaching the fairness of the *deed to be found in the provision empowering Collier to employ Nichols as his agent. It is not stated in the deed nor averred in the bill what compensation Nichols was to receive for his services as agent, nor indeed that he was to receive any; and all suspicion, that it was one of the purposes of the deed to create a profitable employment or lucrative agency for one of the grantors, is entirely shut out by the consideration that the agency might be discontinued at any moment by the action of Collier, or Bragg, or Thompson, or any three of the other creditors. The power in the trustee to appoint the debtor his agent, was conferred by the deeds in each of the cases of Janes v. Whitbread and Coate v. Williams, with the further power to allow him out of the trust estate such sum as to the trustee should seem proper; and there was no suggestion in either case that such a feature vitiated the assignment. It was however argued here by the counsel of the appellants, that even though the deed should be construed as intending no especial benefit to Nichols, it 3ret conferred powers upon the preferred creditors to which the other creditors ought not to be bound to submit; that whilst Bragg and Thompson might be willing to encounter the hazards of continuing the business, in the hope of thereby more effectually insuring the payment of their entire debts out of the trust subject, they had no right, without the consent of the other creditors, to subject the estate of the common debtor to such vicissitudes and risks.
It seems to me, that a satisfactory answer to this is to be found in the check upon the powers of the trustee and the preferred creditors, which the deed itself provides. It is difficult to suppose that Collier or Bragg or Thompson would be willing to embark in any heavy expenditures for the purchase of a new stock of goods, in the face of a provision giving to any three of the other creditors provided for in the *deed, the power at any moment to order a discontinuance of the business and a sale of the goods at auction. And hence arises fairly a verj’' strong inference that the deed was not planned or framed with a view to speculation, or any protracted continuance of the business for the benefit of the preferred creditors. It is true, that the creditors in the second class are not invested by the deed with any interest in the surplus which might arise from the sale of the stock of goods, after paying the debts_ of the preferred creditors: the stock of goods alone being appropriated to the security and satisfaction of Bragg and Thompson, and the credits and other effects alone, to the security and satisfaction of the other creditors. Still, as there is no release by any of the creditors, the creditors in either class have, notwithstanding, and independent of the deed, an interest in seeing that the property devoted to the satisfaction of the creditors in the other class, is made to go as far as possible in discharging the debts of the common debtor. They also have a further interest in the subject, growing out of the fact that the expenses of the trust are to be paid out of the effects and credits. The presence of these interests in the creditors of the second class, in connection with their power over the.subject before adverted to, exhibit such a check imposed by the deed, on the conduct of the preferred creditors, as goes very far, it seems to me, in explaining the deed, and in showing that it was not in the scheme of Collier or Bragg or Thompson, that the trade should be carried on any longer than might be found necessary for the judicious winding up of the concern. And giving a fair and reasonable construction to all the provisions of the deed, and looking to the nature of the subject con *867 veyed, I am of the opinion that the case, in respect of the feature under consideration, is within the influence of the several precedents I have cited, where features of the kind were *held not to invalidate the assignments; that the authority given to replenish the stock of goods was merely designed, as the appellees in their answers aver it was, to enable the trustee and agent to make, occasionally, purchases of the more attractive articles, the presence of which would invite and retain custom, and thus facilitate the “working off” of the less attractive and less saleable portion of the stock; and that the carrying on of the business as provided for, was looked to by the framers of the deed not as one of its main objects and ends, but a,s a temporary expedient or means which, instead of delaying, would in all probability hasten the judicious conversion of the goods into money.
I do not think that either of the cases of Lang v. Lee, 3 Rand. 410; Sheppards v. Turpin, 3 Gratt. 373; and Addington v. Etheridge, 12 Gratt. 436; cited by the counsel for the appellants, can be made to apply to the deed here. In the last of these cases, the grantor retained to himself the possession of the goods, with the right to sell them until default should be made in the paj-ment of the debts secured, and until the trustee should be requested by any of the creditors to close the deed; and thoug'h it is conceded in the second instruction asked in the case, that by the provisions of the deed the grantor was to account to the trustee, the deed in fact contained no such provisions, and was wholly silent as to the proceeds of the sales which the grantor should make during the possession retained tnr him. And in the other two cases, the deeds were even more obviously objectionable than the deed in Addington v. Etheridge. We should, I think, run counter to no decision of this court in declaring that the deed here is not void on the score of the objection under consideration; and for the reasons already stated, I am for so declaring.
Nor do I think that the validity of the deed is either ‘"'wholly or partially destroyed by the fact that the parlnership effects arc conveyed for the purpose of securing the payment of the two thousand dollar note of Nichols to the Farmers Bank. Both partners were present, assenting to the whole arrangement, and uniting in the execution of the deed. There were no executions against their effects. They had done nothing to impair their dominion over their property. They were not under the operation of any bankrupt or quasi bankrupt or insolvent laws regulating the disposition of their assets. Under such circumstances, I do not doubt that the two partners combined had the same power and control over their social effects as each one had over his own individual and separate estate. Each one had a right, for a valuable and adequate consideration, to make a bona fide sale of his interest in the concern, or his share in the effects 1o the other. There was nothing to forbid their making a fair division of the social effects between themselves as the equities betv’een them required; and if upon a settlement of their transactions one was indebted to the other, the former had the same right to apply his share of the effects to the payment of the debt that he had to apply his separate estate to the payment of any other debt he might owe.
Neither of them, it is true, had a right to give away his property, whether social or separate, to the prejudice of his creditors of either class, nor to pledge such property for the pa3?ment of the debts of others, for which he was in no wise bound, so as thereby to defeat the paj^ment of debts for which h.e was bound. But if either of the partners had contracted a debt in his own name alone, of which the equities between the partners would require that the other should pay his share, J can see no good reason why the partners might not agree to apply the assets of the firm to the payment of such debt, or to give a deed of trust upon Hheir partnership effects for the purpose of securing the payment, though the effect of making such an application of the assets, or of giving such a deed, might be to defeat the payment of debts contracted in the name of "the firm.
As authority for these propositions, I would refer to Ex parte Ruffin, 6 Ves. R. 119; Ex parte Williams, 11 Ves. R. 3; Story on Partnership 508; and to the cases cited in the notes to Silk v. Prime, 2 Leading Cas. in Sq. (3d Am. ed.) p. 72, 331-2-3, 71 Law Libr. ; and more especially, Siegel v. Childrey, 4 Casey’s R. 279.
Now, it is stated in the bill that the debt from Hill to Bragg (the two thousand five hundred dollars) and the debt from Nichols to the bank (the two thousand dollars), were due for money borrowed by Hill and Nichols, respectively, to put into the business ox their said partnership, as their respective shares', of in-put capital. And in their answers, Hill and Nicliols state that each was to put in two thousand five hundred dollars; that in order to carry out the agreement, Nichols borrowed two thousand dollars of the bank, on his individual note, endorsed by Thompson; and that Hill, being unable to raise his two thousand five hundred dollars out of his private resources, or upon his individual credit, borrowed that sum of Bragg, on the note of the firm of Hill & Nichols. Bragg makes a statement to the same effect in his answer, and files with it, as an exhibit, a copy of the record of a judgment obtained by him upon the note, by the confession of Hill and Nichols, and also a copy of the note on which the judgment was founded. The origin and character of the two debts are thus sufficiently shown; and indeed I did not understand the counsel for the appellant as contending that the record was wanting in proof in that regard. Nichols and Hill each also further state, that, such being the origin and character of the two debts, and *868 the money derived *from each loan having gone into the capital and business of the firm, and being represented by a corresponding amount of the goods and effects of the partnership, they deemed it just and proper, and so agreed, that the two debts should be placed on the same footing, and should both be paid out of the assets of the firm. It' is true, that it is not stated in the answers when this agreement was made, whether at the time when Hill borrowed the two thousand five hundred dollars and gave the note of the firm for its payment, or at the time of executing the deed, or at some point of time in the interval ; and I am inclined to infer from the answers, that the agreement was, most probably, not made till about the time of their coming to the conclusion to make the deed. But I do not regard the date of the agreement as material to the rights of the parties. It is enough, in the view which I take of the case, that the equities between the parties fully justified such an agreement ; that they did so agree and carry out their agreement in the deed; as sufficiently appears by the deed itself.
It would be a very harsh and unreasonable judgment, as respects Nichols, to infer from his merely allowing Hill to raise his two thousand five hundred dollars on the note of the firm, that he thereby contemplated and agreed that in a final settlement of the partnership said note should, as between him and Hill, rank as a partnership debt, and be paid out of the assets of the firm, whilst he should be left to pay the note of two thousand dollars out of his private means. So to infer, would be in effect to suppose that Nichols intended to make a donation to Hill of the half of the two thousand dollars .put by him into the concern, inasmuch as Nichols would be clearly two thousand dollars in advance to the firm more than Hill, if in a settlement of their affairs the two thousand five hundred dollars should be treated as the debt of the firm, *and the two thousand dollar note as the debt of Nichols alone.
It is true, as it respects the owners of the two debts, that whilst Bragg stood as the creditor of the firm, the bank stood as the creditor of Nichols alone. . Yet as between the partners in settling their transactions and adjusting their burdens inter se, Nichols had, as I conceive, a clear right in equity to insist that the debt of two thousand dollars should be placed on the same footing with the debt of two thousand five hundred dollars. This being so, and there being nothing further in the record to show how the parties stood in respect of their advances to the firm, it cannot be said that the deed as to Hill is, in respect to the two thousand dollars, without consideration, or that he is appropriating his share or interest in the effects of the firm to the payment of the debt of another, for which he was not bound. And upon a view of the whole case, I am of the opinion that the appellants have failed to show that the deed is void or in any respect invalid.
The appellants, however, have a right to subject the surplus proceeds of the trust subject, if any, after the satisfaction of the debts secured in the deed, to the discharge of their judgments. The bill, it is true, does not specifically ask for such relief. It seeks to set aside the deed, and to charge the entire subject conveyed with the payment of the judgments. There is, however, a prayer for general relief, under which, according to the decisions of this court in Skipwith v. Cunningham, 8 Leigh 271, and Janney v. Barnes, 11 Leigh 100, the appellants were entitled to have the surplus applied in discharge of their, demands.
In each of those cases, as here, the bill was framed with a view to the setting the deed aside; in neither was there any specific prayer for an account. Yet this court, in each case, though concurring in opinion *with the court below, that the deeds were valid, held that, under the prayer for general relief, the surplus might be decreed to the appellant, reversed the decree dismissing the bill, and remanded the cause for an account.
Upon the authority of those cases, I am of the opinion that we should affirm the decree so far as it dismisses so much of the bill as seeks to avoid the deed, whether in whole or in part, and reversing on account of the error in failing to direct an account, to remand the cause with instructions to the Circuit court to order an account of the. trust fund, unless the benefit of such an order is waived by the appellants, and proceed with the cause as equity shall require; but if the appellants waive an account, to dismiss the residue of the bill with costs to the appellees.
I am further of the opinion, that notwithstanding the reversal to the extent just indicated, the appellees should have their costs in this court. It appears, I think, satisfactorily, from the pleadings and the opinion and decree of the Circuit court, that the questions touching the validity of the deed were alone litigated between the parties and actually passed upon by the court; and that the failure to order an account, or to submit to the appellants whether they' would have an account, was a mere omission, proceeding from an oversight on the part of the court, and not from any error of opinion: an omission consequently which we may well presume would not have occurred, or would have been promptly corrected, but for the neglect of the appellants to bring the matter directly to the notice of the court. Under such circumstances, as there may be a surplus of the fund after satisfying the purposes of the deed, whilst, in order to avoid the possible injustice which might be done to the appellants, by wholly affirming the decree dismissing the bill, it becomes necessary to reverse and remand for an account, *we shall be fully justified by the decision of this court in Handly v. Snodgrass, 9 Leigh 484, and numerous cases there cited by Judge Tucker, as also by several cases since de- *869 eided (see Blessing-’s admJr v. Beatty, 1 Rob. R. 287; Williamson’s ex’or v. Howard. 2 Rob. R. 39; and Boyce’s adm’r v. Smith, 9 Gratt. 704) ; in decreeing- the costs of the appeal to the appellees. In all of these cases, the appellants succeeded in obtaining the correcting of errors, which, if allowed to stand, might have operated to their prejudice; yet, in each case, the costs of the appeal were given to the appellee. In some instances, the decree of the Circuit court was affirmed without prejudice; in others the decree was amended, and as amended, affirmed; and in others, the decree was reversed with costs to the appel-lees. The last mentioned mode of correcting this error is, I think, the one most appropriate here.
The other judges concurred in the opinion of Daniel, J.
Decree reversed, with costs to the ap-pellees.